Andrew Bates, OSB #781342
1001 S.W. Fifth Avenue
Suite 1400
Portland, Oregon  97204

ATTORNEY FOR DEFENDANT ADAM PERKINS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. CR 11-165 |
| Plaintiff, | ) | |
| | ) | SENTENCING |
| vs. | ) | MEMORANDUM |
| | ) | |
| ADAM PERKINS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

In the summer of 2006, the overall economy and, in particular, the real estate market was very hot.  With no anticipation of the coming bursting bubble, many people were taking advantage of the liberal lending policies and seemingly ever increasing home prices.  Some of those individuals submitted loan applications without full or accurate disclosure of their undying assets believing that as long as they continued to make payments on the properties and the values of the

1  Sentencing Memorandum

properties continued to rise, there would be no loss to lenders.

Adam Perkins freely admits that his personal greed fueled by excessive alcohol and daily marijuana use led him to becoming a "straw buyer" for several properties during a relatively short period of time. Loan documentation verifies that Mr. Perkins made mortgage payments on these properties in 2006 in the amount of $189,212.00 and in 2007 in the amount of $182,374.00 for total payments of $371,586.00 before defaulting on the various loans.1 The amounts he paid out ended up being significantly more than the total kickbacks he received from the Lighthouse Financial Group who brokered the loans. Unlike other defendants associated with these transactions, Mr. Perkins ended up having a substantial loss for his participation in the purchase of these properties. He also incurred a tax debt of approximately $80,000.00 to the Internal Revenue Service as a result of these transactions, which he has been paying down at the rate of $439.00 per month.2

In spite of personal financial loss in these transactions, Adam Perkins knew that what he became involved in was wrong. He was approached by Joel Rosabal who took the lead in bringing in clients to Lighthouse Financial Group. His decision to go along with the misrepresentations on the loan applications was influenced by Mr. Rosabal's representations that the properties could be sold at a later date for a profit. As noted in the presentence report, Mr. Perkins "would not have

---

1 Mr. Perkins also paid closing costs on these properties in the amount of $26,145.00. These figures can be verified through IRS statements.

2 Mr. Perkins has not missed a payment for over a year. The IRS has also applied tax refunds of approximately $5,000.00 to his debt.

2   Sentencing Memorandum

purchased the number of residences he did without Rosabal's influence." (*PSR at paragraph* 46). None the less, Mr. Perkins did agree to the fraudulent misrepresentations and takes full responsibility for his actions.3

On New Year's Day, 2008, Adam Perkins had an epiphany. That morning he realized all he had lost. He felt alone, isolated, and desperately want wanting to change his life and make amends. He stopped the partying and drinking, found his faith in god again, and reestablished his relationship with the love of his life and mother of his child, Natasha Pressler. He dissociated himself from all his friends and dysfunctional family members who had been a corrupting influence on his life. He began regularly attending church and joined a church group. He took financial responsibility for his future wife to be and their infant son.

As part of his rehabilitative process, Adam Perkins affirmatively decided to come clean about everything he knew regarding the real estate transactions once he was contacted by IRS agents in February, 2008. As noted in the memorandum of interview, "Perkins stated that he understood why we wanted to talk to him and was relieved that he was being interviewed." He went on to tell the agents in great detail about his participation in these transactions. There were many subsequent proffer sessions with the government over the course of the next two years in which Mr. Perkin's was described as "very forthcoming."4

---

3 Both the government and probation concur that Mr. Perkins should receive a 2 level reduction for minor role.

4 The government intends to recommend a 4 level downward departure for substantial assistance pursuant to Section 5k1.1. Probation joins in this recommendation.

3 Sentencing Memorandum

Almost four years has gone by since that first meeting with the IRS agents. It is not an exaggeration to state that Adam Perkins has transformed his life since that time. He married Natasha in 2010. Their second child was born in March, 2011. He has worked extremely hard at supporting both financially and emotionally his wife and two children. By all accounts, he is a hands-on father. His relationships with his boys and his wife are the most important thing in the world to him. As Adam states in his letter to the court, "I am just daddy and husband and that is all I want to be."

Adam Perkins has a very good job as a salesman for commercial heating and air conditioning systems with Northwest Control Company located in Milwaukie, Oregon. He has been promoted several times. The job not only allows him to provide for his family, but to also continue to make restitution to the IRS on the substantial debt incurred as part of these real estate transactions. If Mr. Perkins were to be incarcerated in a manner that did not allow him to continue to be employed with this business, then his wife and children will be forced to seek government assistance and the ongoing payments to the IRS will cease. It is unlikely that his job would be available even after a relatively short term of incarceration. The emotional loss for his boys cannot be easily calculated.

In addition to the extreme financial and emotional burdens that a sentence involving incarceration would bring upon this family, it needs to be noted that Mr. Perkins is not in good health. As detailed in the presentence report, he suffers from chronic pain associated with injuries related to several recent car accidents in which he was not at fault. He has undergone surgeries on his back and neck to relieve some of this pain, but will be on s strictly monitored pain management

4  Sentencing Memorandum

therapy for the rest of his life.

## RECOMMENDATION

The plea agreement prohibits counsel from making any recommendation less than one year and one day incarceration. The court has complete discretion, however, to fashion any appropriate sentence in this matter. The court is well aware of the factors that may warrant a sentence outside the advisory guideline range under 18 USC Section 3553(a). Given the nature and circumstances surrounding this offense, it is apparent that Mr. Perkins will never be involved in such activities again. He is meeting his ongoing and substantial debt obligation to the IRS by working full time in spite of significant personal health issues. He is providing for his wife and two minor children. He has cooperated in every way possible with the government in disclosing his and others involvement in this case. He has shown his intent to rehabilitate himself these past several years by actions and not words.

DATED this 19th day of September, 2011.

        Respectfully Submitted,

        */s/ Andrew Bates*
        Andrew Bates
        Attorney for Defendant Adam Perkins

5  Sentencing Memorandum